IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

QUINCEY GERALD KEELER,          )
                                )
                Plaintiff,      )    **CIVIL ACTION**
                                )
v.                              )    No.  09-1356-MLB
                                )
ARAMARK,                        )
                                )
                Defendant.      )
_____)


<u>**MEMORANDUM AND ORDER**</u>

This case comes before the court on defendant's motion for summary judgment. (Doc. 65). The motion has been fully briefed and is ripe for decision. (Docs. 66, 80, 81, 84, 85). Aramark's motion is granted in part and denied in part for the reasons herein.

**I.   Procedural History**

This case was filed in 2009 against both Aramark, plaintiff's former employer, and Wesley Hospital. Keeler has filed a total of six cases against Aramark since 2008. Plaintiff's first action was filed on June 2, 2008, and was almost immediately followed by a second action on June 26, 2008. <u>See</u> Case Nos. 08-1168-MLB and 08-1187-MLB. The court consolidated those actions into one case, hereafter the 2008 case. The court granted summary judgment in favor of Aramark and the case is currently on appeal at the Tenth Circuit, case no. 11-3320. After filing the 2008 case, plaintiff filed this current action on November 13, 2009, which included allegations that occurred subsequent to the 2008 case.[1]

_____

[1] In 2010, plaintiff again filed causes of action against Aramark for acts allegedly occurring after the filing of the 2009 case. <u>See</u> Case Nos. 10-1129-JTM and 10-1358-JTM. Those cases were consolidated

In March 2010, Wesley moved for dismissal. (Doc. 20). In July 2010, plaintiff moved for summary judgment against Wesley. (Doc. 35). The court ultimately denied plaintiff's motion and granted Wesley's motion. (Doc. 40). The court certified the order pursuant to Fed. R. Civ. P. 54(b). Plaintiff appealed. The Tenth Circuit affirmed this court's decision on April 29, 2011. On September 14, Aramark moved for summary judgment. (Doc. 65). The magistrate judge held a scheduling conference on September 27. The scheduling order set a discovery deadline for February 1, 2012, and a dispositive motion deadline for April 2, 2012. Plaintiff then moved to amend his complaint to add claims from the 2010 cases which were dismissed by Judge Marten. (Doc. 69). This court denied that motion. (Doc. 72).

On November 23, 2011, plaintiff filed a response to Aramark's motion for summary judgment which stated that he had just received Aramark's motion and plaintiff needed additional time to respond. (Doc. 75). The court granted plaintiff's motion for additional time. (Doc. 78). Plaintiff filed his response on December 28, 2011. After reviewing plaintiff's response, the court observed that plaintiff complained about his inability to conduct discovery because of the court's prior orders. The court sent a letter to plaintiff and defense counsel in which the court set a status conference and instructed plaintiff to be prepared to inform the court of his requested discovery. (Doc. 82).

On February 27, 2012, the court held the telephone status conference. During that conference, plaintiff stated that he would

---

by Judge Marten. In late 2011, plaintiff filed his final action against Aramark, alleging wrongful termination. See Case No 11-1372.

like to conduct limited discovery.[2]  Plaintiff sought time to send requests for admissions to Aramark.  Plaintiff did not request any additional discovery after repeated questions by the court.  The court granted plaintiff's request and then set deadlines for supplemental briefing after the short period of discovery.  Both parties have now filed their supplemental briefs and the court is prepared to rule on Aramark's motion.

## II.  Plaintiff's Pro Se Status

The court is mindful that plaintiff is proceeding pro se.  It has long been the rule that pro se pleadings, including complaints and pleadings connected with summary judgment, must be liberally construed.  See Hall v. Bellmon, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991); Hill v. Corrections Corp. of America, 14 F. Supp.2d 1235, 1237 (D. Kan. 1998).  This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction.  See Hall, 935 F.2d at 1110.  Liberal construction does not, however, require this court to assume the role of advocate for the pro se litigant.  See id.  Plaintiff is expected to construct his own arguments or theories and adhere to the same rules of procedure that govern any other litigant in this district.  See id.; Hill, 14 F. Supp.2d at 1237.  A pro se litigant is still expected to follow fundamental procedural rules.  Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir. 1994).

---

[2]  Plaintiff's supplemental response suggests that the court restricted plaintiff's discovery to his negligence claims.  This is not accurate.  The court informed plaintiff that he could conduct discovery on his claims and asked plaintiff what discovery he would like to conduct.  The court in no way restricted discovery to certain claims.

**III. Facts and Procedural History**

Plaintiff was hired by Aramark in January 2006 as a food service worker.  Plaintiff's position was located in the cafeteria at Wesley Hospital in Wichita, Kansas.  Upon his hiring, plaintiff was given a copy of Aramark's employee handbook.  As a food service worker, plaintiff's duties included cashiering, food preparation, filling machines, setting up food areas, stocking condiments, serving customers, carving meat and cleaning tables.

In January 2007, Aramark's time record system automatically deducted a lunch break of half an hour of pay from each employee's paycheck because employees were required to take a thirty-minute lunch break.  Plaintiff has alleged that his paychecks were five hours short of overtime because he worked through lunch on those dates, for a total of 15 hours.

On September 6, 2007, plaintiff brought a doctor's note stating he had been hospitalized from August 28, 2007, to September 5, 2007, for a posterior neck abscess.  Plaintiff also produced an additional doctor's note which stated that he was unable to work until September 15.  Aramark informed plaintiff that he qualified for FMLA leave for his absence.  Plaintiff was on FMLA until November 2.  Plaintiff did return to work on November 2 as a food service worker.  Plaintiff continued to work in the cafeteria and had similar duties.

Aramark initially scheduled plaintiff to work on November 1 based on a October 25 doctor's note.  When plaintiff did not report for work, Aramark marked an unexcused absence on plaintiff's record.  Aramark corrected this absence at a later date.  All other alleged unexcused absences which were recorded during plaintiff's medical

-4-

leave have been removed from plaintiff's record.  Judgment was granted in favor of Aramark on plaintiff's FMLA and tort claims as to the absences in 2007.  See Case no. 08-1168, Doc. 174.

Plaintiff was again absent from work in late August and early September 2008.  Plaintiff was given counseling but it was later removed from his file after Aramark determined that the absences were calculated incorrectly.

On December 27 and 28, 2008, plaintiff requested to work overtime but his request was denied.  On those dates, plaintiff was the only male working on second shift.  On December 27, 2008, nine food service employees worked in food services.  All employees, with the exception of one employee who worked eleven minutes over eight hours, worked less than eight hours.  On December 28, seven food services employees were working.  On that date, and without being asked to do so by management, one female employee worked six minutes over eight hours and another female employee worked one minute over eight hours.

On February 7, 2009, plaintiff was reminded that his break did not begin for five more minutes.  On February 19, 2009, the Food and Nutrition Services Director, Terry Mitchell, met with all food service workers to discuss the new non-slip shoes that were to be provided to employees.  Mitchell, in response to a question, pointed out plaintiff's slip covers on his shoes and the fact that plaintiff's shoes were not in compliance with the policy.  On February 20, plaintiff's meal tickets were short by $14.89.  Plaintiff did not receive a write-up because plaintiff informed Diana Porter, the interim retail manager, that another employee counted his meal tickets.  On February 26, plaintiff was $2.02 over in his drawer in

-5-

violation of the policy and he received a "Conference Record of Discussion."

On March 5, 2009, Mai Vu, lead food service employee, informed Diana Porter and the FNS Director, Jason Watts, that plaintiff had not paid for his meal. A full investigation followed, which included tape recorded interviews, and Aramark determined that plaintiff did not violate company policy but Brittany Williams and Mai Vu had violated the policy and therefore received "Verbal Records of Discussion." Plaintiff, however, was issued a "Verbal Record of Discussion" for serving himself food from the service side of the cafeteria line.

In February and March 2009, plaintiff sent complaints to Aramark headquarters and to local managers that concerned the incidents which occurred during those months. Aramark did not investigate the complaints with the use of tape recorders. Aramark also did not interview plaintiff or conduct follow-up meetings with respect to the complaints.

Plaintiff's amended complaint in this case was filed on February 1, 2010. The amended complaint includes a total of 44 claims against Aramark. The allegations include violations of the FLSA, gender discrimination, hostile work environment, breach of contract, negligence and defamation. Aramark has moved for summary judgment on all claims.

**IV. Summary Judgment Standards**

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim. <u>Adamson v. Multi Community Diversified Svcs., Inc.</u>, 514 F.3d 1136, 1145 (10th Cir. 2008). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

**V.   Analysis**

**A.   FLSA**

Plaintiff alleges that he was not paid for fifteen hours of overtime during the month of January 2007. Under the FLSA, an employer must pay an employee overtime compensation at one and one-half the employee's regular rate of pay for all hours worked by the employee in a given week in excess of forty hours. 29 U.S.C. § 207(a)(1). Defendant contends that plaintiff's claim is barred by the statute of limitations or, alternatively, that plaintiff has not established that he worked those hours.

The FLSA generally imposes a two-year statute of limitations unless the defendant's violations are shown to be willful, in which case a three-year period applies. <u>See</u> 29 U.S.C. § 255(a). Because

-7-

plaintiff's complaint was filed in November 2009, plaintiff must establish that Aramark's actions were willful or plaintiff's FLSA claims will be barred by the statute of limitations.  To fall under the three-year limitation, plaintiff must show that "the employer either <u>knew</u> or showed reckless disregard for the matter of whether its conduct violated the statute." <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988)(emphasis supplied).

Aramark's time record system automatically deducted a lunch break from all employees' hours in January 2007 because it was Aramark's policy for all workers to take a thirty-minute lunch break.  Plaintiff contends that he did not take a lunch break during the month of January because it was busy and he had to work through lunch.  Plaintiff further contends that he told two different supervisors about the hours he was missing.  <u>See</u> Doc. 80, at 4.  Aramark, however, responds that plaintiff never informed Aramark of the missing overtime hours from his paycheck.  This dispute is a material question of fact that centers on Aramark's knowledge.  At this stage, the court is required to view all facts in the light most favorable to plaintiff.  Because plaintiff has attached an affidavit which states that he told a supervisor that he was not paid for his overtime in January 2007, a genuine dispute of material fact exists as to whether Aramark knew that it was violating the FLSA when it did not pay plaintiff overtime in January 2007.  Therefore, the court cannot conclude that plaintiff's claims are barred by the statute of limitations.

Alternatively, Aramark asserts that plaintiff's evidence is not sufficient to state a claim.  Plaintiff has submitted an affidavit stating that he was not paid overtime for thirty minutes on each day

he worked through his lunches in January.  Aramark admitted that its computer system automatically deducted thirty minutes from plaintiff's hours on each day that he worked.  Plaintiff has also submitted his paycheck stubs to support the fact that he did not receive overtime for those hours.  The court is unsure as to what additional evidence Aramark believes is necessary for plaintiff's claims to survive summary judgment.  This is simply an issue for the jury.

Therefore, Aramark's motion for summary judgment on plaintiff's FLSA claims is denied.

**B.   Hostile Work Environment**

Under Title VII, "it is an unlawful employment practice for an employer ... to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." Pinkerton v. Colo. Dep't of Transp., 563 F.3d 1052, 1058 (10th Cir. 2009)(quoting 42 U.S.C. § 2000e-2(a)(1)).  Plaintiff may make out "a claim of sex discrimination based on a hostile work environment" if he can "show (1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." Id.

"Title VII does not establish a general civility code for the workplace." Morris v. City of Colorado Springs, 666 F.3d 654, 663 (10th Cir. 2012)(internal citations omitted). "Accordingly, the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim." Id.  "An employer creates a hostile

work environment when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Hall v. U.S. Dep't of Labor, 476 F.3d 847, 851 (10th Cir. 2007)(internal citations omitted).

"Plaintiff must show that the environment was both objectively and subjectively hostile or abusive." Morris, 666 F.3d at 664.   The court must look to the totality of the circumstances and consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id.

Plaintiff's allegations of hostile work environment[3] center on the following facts: 1) plaintiff was denied overtime work on December 27 and 28; 2) plaintiff was yelled at on two occasions; 3) plaintiff was harassed over meal tickets on February 20, 2009; 4) plaintiff received a written reprimand due to an overage on February 27, 2009; 5) Aramark wrongfully investigated plaintiff over an alleged failure to pay for his meals; and 6) plaintiff received a write up for getting his food from the service side of the food line.

Even if the court accepted all of plaintiff's allegations concerning his hostile work environment claim as true, the totality of the circumstances do not show that plaintiff was subjected to a hostile or abusive working environment.   In December, the evidence shows that only three workers obtained just a few minutes of overtime.

_____

[3] These claims are also referred to in the briefing as retaliatory hostile work environment.

-10-

Therefore, the denial of plaintiff's overtime request cannot reasonably be viewed as discriminatory conduct. Turning to plaintiff's allegations that he was yelled at, the evidence shows that Mina Arredondo told plaintiff "go, just go" after denying his request for overtime. This statement did not include any harsh or derogatory language. Additionally, plaintiff has not put forth any evidence of plaintiff's reprimand from management about his shoes. The mere fact that he was reprimanded for admittedly being in violation of the policy does not support a finding of discriminatory conduct. With respect to the written reprimand and investigations, the evidence shows that Aramark was following company policy when all complaints were investigated. Moreover, plaintiff does not dispute that he did indeed violate company policy on the dates that he received reprimands.

Therefore, Aramark's motion for summary judgment on plaintiff's claim of hostile work environment is granted.

### C.  Gender Discrimination

Plaintiff asserts that Aramark discriminated against him because of his gender when Aramark refused to allow plaintiff to work overtime in December 2008. A traditional prima facie case of gender discrimination requires sufficient circumstantial evidence to show: "(1) [plaintiff] is a member of a protected class, (2) [plaintiff] suffered an adverse employment action, (3) [plaintiff] was qualified for [his job], and (4) [plaintiff] was treated less favorably than others not in the protected class." Turner v. Pub. Serv. Co. of Colo., 563 F.3d 1136, 1142 (10th Cir. 2009). As a member of a historically favored group, however, plaintiff may not rely on the

traditional factors to establish a prima facie case by way of circumstantial evidence, unless, "in lieu of showing that he belongs to a protected group, [he] establish[es] background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." <u>Notari v. Denver Water Dep't.</u>, 971 F.2d 585, 589 (10th Cir. 1992).

Without direct evidence of gender discrimination, plaintiff's claim must rely on circumstantial evidence and proceed under the <u>McDonnell Douglas</u>[4] burden-shifting framework. Pursuant to the <u>McDonnell Douglas</u> decision, the following three steps are required for evaluating Title VII disparate treatment claims: First, plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if plaintiff succeeds in proving the prima facie case, the burden shifts to Aramark "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should Aramark carry this burden, plaintiff must then have an opportunity to prove by preponderance of the evidence that the legitimate reasons offered by Aramark were not its true reasons, but were a pretext for discrimination.

As discussed previously, plaintiff must meet his prima facie burden and also show that Aramark are "unusual employers who discriminate against the majority." <u>Notari</u>, 971 F.2d at 589. Plaintiff has failed to produce any evidence that would support a finding that Aramark is the unusual employer who discriminates against the majority.

_____

[4] 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973).

Because plaintiff cannot provide background evidence, his only other method of establishing a prima facie case of discrimination is by offering evidence that shows it is reasonably likely he would not have been fired or suffered adverse employment actions "but for" the defendant's discrimination.   <u>Notari</u>, 971 F.2d 585, 590 (10th Cir. 1992).   It is not enough for plaintiff to show he was treated differently than another similarly situated employee, but plaintiff "must allege and produce evidence to support specific facts that are sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred." <u>Id.</u>

Plaintiff has not attempted to satisfy the but for standard in his response nor does the evidence submitted by plaintiff establish that the adverse actions were taken because of his gender.   Therefore, Aramark's motion for summary judgment on plaintiff's claim of gender discrimination is granted.

**D.   Negligence**

Plaintiff asserts that Aramark was negligent in failing to properly investigate his complaints that he made in February and March 2009.   Plaintiff's allegations centered around reprimands received in accordance with company policy, alleged improper treatment by supervisors who reprimanded plaintiff in front of other employees, and allegations about the investigation of the food pay incident.   In order to prevail on a negligence claim, plaintiff must establish the existence of a duty, a breach of that duty, an injury, and proximate cause.   <u>D.W. v. Bliss</u>, 279 Kan. 726, 734, 112 P.3d 232 (2005).

Plaintiff has failed to establish that Aramark had a duty to investigate plaintiff's complaints in a certain matter, i.e. using

tape recorders and conducting interviews. Moreover, plaintiff has failed to identify an injury as a result of Aramark's failure to investigate his claims. Plaintiff has not shown that his employment record is inaccurate or that he lost some employee benefit as a result of his complaints. The undisputed facts show that plaintiff's written reprimands were all in accordance with Aramark policy. Furthermore, plaintiff has not alleged that the verbal reprimands were incorrect but only that plaintiff prefers to be reprimanded in private. Therefore, Aramark is entitled to summary judgment on plaintiff's general negligence claims.

In addition to general negligence claims, "Kansas law recognizes negligent supervision as a separate and distinct theory in addition to theories of negligent hiring and negligent retention." Wayman v. Accor N. Am., Inc., 45 Kan. App. 2d 526, 541, 251 P.3d 640, 650 (2011).

### Negligent Supervision and Retention

Plaintiff asserts claims of negligent supervision and retention against Aramark due to its failure to investigate his complaints. To establish negligent supervision under Kansas law, plaintiff must show that "the employer had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor" and "such harm is within the risk." Estate of Sisk v. Manzanares, 262 F. Supp.2d 1162, 1187 (D. Kan. 2002). Plaintiff has failed to show that Aramark had any reason to believe that a risk of harm to others would result from the employment of Terry Mitchell, Mina Arredondo and Jason Watts. Moreover, plaintiff has failed to show that Aramark's employees' conduct resulted in any harm to

-14-

plaintiff because, as previously discussed, plaintiff's record has been corrected, plaintiff's co-workers received reprimands and plaintiff's written reprimands were warranted pursuant to Aramark's policy.

In order to establish a claim of negligent retention, plaintiff must show that Aramark has retained an employee that it knows or should have known is incompetent. Beam v. Concord Hosp., Inc., 873 F. Supp.c 491, 503 (D. Kan. 1994). Plaintiff must also establish that Aramark "had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor." Estate of Sisk v. Manzanares, 262 F. Supp.2d 1162, 1187 (D. Kan. 2002). Plaintiff has not met his burden. Therefore, Aramark's motion for summary judgment on these claims is granted.

### Negligent Training

Plaintiff has also alleged that Aramark was negligent in training its staff on handling complaints pertaining to violations of the Code of Conduct. In order to state a claim of negligent training, however, plaintiff must establish that Aramark had a reason to believe that its employees were not properly trained. Thomas v. County Comm'rs of Shawnee County, 40 Kan. App.2d 946, 961, 198 P.3d 182 (2008). Plaintiff has failed to establish that Aramark had reason to believe that its employees were not properly trained and therefore his claim of negligent training cannot survive summary judgment. Aramark's motion of summary judgment on this claim is granted.

### E.   Remaining Claims

Throughout plaintiff's response and supplemental response, plaintiff states that he has withdrawn all other claims in his amended

-15-

complaint.  (Docs. 80 at 21-22; 84 at 1).  Therefore, the court grants defendants' summary judgment motion as uncontested on plaintiff's remaining claims.  Alternatively, defendants' motion for summary judgment on the remaining claims is granted for the reasons set forth in Aramark's motion.

## VI.  Conclusion

Aramark's motion for summary judgment is granted in part and denied in part.  The only remaining claims in this case are the FLSA claims.  All other claims are dismissed.  The parties must submit a pretrial order to the court by May 30, 2012.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged.  Any such motion shall not exceed three double-spaced pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.  No exhibits may be attached to any submissions.


IT IS SO ORDERED.

Dated this 14th    day of May 2012, at Wichita, Kansas.


s/ Monti Belot

Monti L. Belot

UNITED STATES DISTRICT JUDGE